# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| EVELYN LUISA R., for S.J.B., a minor child,<br><br>Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security[1],<br><br>Defendant. | Case No. 1:20-CV-00142-REP<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Evelyn Luisa R.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 22) appealing the Social Security Administration's final decision finding her minor child, S.J.B., not disabled and denying her child's claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

In 2013, Petitioner's minor child, S.J.B., was found to be disabled. AR 18.[2] Petitioner received disability insurance benefits on behalf of S.J.B. beginning April 15, 2013 and continuing until 2017. *Id.* On February 9, 2017, the Social Security Administration conducted a continuing disability review and determined that S.J.B. was no longer disabled. *Id.* S.J.B.'s

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted, therefore, as the respondent in this suit. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

[2] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 17).

**MEMORANDUM DECISION AND ORDER - 1**

Case 1:20-cv-00142-REP   Document 25   Filed 05/23/22   Page 2 of 11

disability benefits ceased, therefore, in the spring of 2017.  AR 104.  Petitioner's request for

reconsideration of this decision was denied and Petitioner asked for a hearing in front of an

Administrative Law Judge ("ALJ").  AR 18.

On January 18, 2019, the claim went to a hearing before ALJ Stephen Marchioro.  *Id.*  On

March 8, 2019, the ALJ issued a decision that was unfavorable to Petitioner.  AR 15-35.

Petitioner appealed this decision to the Appeals Council.  The Council denied Petitioner's

request for review, making the ALJ's decision the final decision of the Commissioner of Social

Security.  AR 2-4.

Having exhausted her administrative remedies, Petitioner filed this case.  Petitioner raises

one argument on appeal: that the ALJ erred in determining S.J.B.'s attention deficit hyperactivity

disorder (ADHD) and speech and language delays did not functionally equal a listed impairment.

Pt.'s Br. at 3-9 (Dkt. 22.).

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are

conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See*

*Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.*

*Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less

**MEMORANDUM DECISION AND ORDER - 2**

than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098.  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

A child is disabled for the purpose of receiving SSI benefits if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  To decide if a child is entitled to disability benefits, an ALJ conducts a three-step sequential

MEMORANDUM DECISION AND ORDER - 3

evaluation. 20 C.F.R. § 416.924(a).  In the first step, the ALJ determines whether the child

engaged in substantial gainful activity during the alleged disability period. 20 C.F.R. §

416.924(b).  If the child has been engaged in substantial gainful activity, the analysis ends and

disability benefits are denied. *Id*.  Otherwise, the ALJ proceeds to the second step.

At step two, the ALJ determines whether the child has a severe medically determinable

impairment or combination of impairments.  20 C.F.R. § 416.924(c).  If there are no such

impairments, the disability claim is denied.  *Id*.  If there are such impairments, the ALJ proceeds

to the third step.

In the third and final step of the analysis, the ALJ determines whether the child's

impairment meets, or medically or functionally equals, an impairment in the Listing of

Impairments, 20 C.F.R. § 404, Subpart P, App. 1.  If the impairment either meets or equals a

listed impairment, it is presumed to cause "marked and severe functional limitations."  20 C.F.R.

§ 416.924(d).  If the impairment has lasted or can be expected to last for at least twelve months,

then the child is deemed disabled and awarded benefits.

If the impairment does not meet a listed impairment, the ALJ must assess functional

equivalency to a listed impairment.  In determining whether an impairment or combination of

impairments is functionally equivalent to a listed impairment, the ALJ must assess the child's

functioning in terms of six domains, and determine the child's ability: (1) to acquire and use

information; (2) to attend and complete tasks; (3) to interact and relate with others; (4) to move

about and manipulate objects; (5) to care for oneself, and (6) to attend to his health and physical

well-being.  20 C.F.R. § 416.926a(a)-(b).  To demonstrate functional equivalence, the child must

exhibit a marked limitation in two of the domains, or an extreme limitation in one domain.  20

C.F.R. § 416.926a(d).  A "marked limitation" is one that "seriously interferes with [a person's]

**MEMORANDUM DECISION AND ORDER - 4**

ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).

By contrast, an "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

## THE ALJ'S FINDINGS

The ALJ found that S.J.B. suffers from the following severe impairments: attention deficit disorder (ADHD) and speech/language issues. AR 21, 34-35. The ALJ recognized that the Social Security Administration found these conditions to be disabling as of 2013, when S.J.B. was five years old. AR 21-23. The ALJ concluded, however, that S.J.B.'s conditions had medically improved since that time. AR 23. Specifically, the ALJ determined that, beginning on February 9, 2017, S.J.B. had (i) less than a marked limitation in acquiring and using information, (ii) less than a marked limitation in attending and completing tasks, (iii) less than a marked limitation in interacting and relating with others, (iv) no limitation in moving and manipulating objects, (v) no limitation in caring for himself, and (vi) no limitation in health and physical well-being. AR 30-34. As a result of these findings, the ALJ affirmed that S.J.B. was no longer disabled.

## DISCUSSION

Petitioner's sole challenge on appeal is that the ALJ misevaluated S.J.B.'s functioning in two of the six domains, thereby causing the ALJ to wrongly conclude that S.J.B.'s conditions did not functionally equal a listed impairment. Because the contested findings are supported by substantial evidence, the Court must affirm the ALJ's decision. *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 5**

### 1. *Acquiring or Using Information*

To support his finding that S.J.B. has less than a marked limitation in acquiring or using information, the ALJ cited to the opinions of three psychological consultants. AR 30. Each of these consultants conducted an independent review of the record and found that while S.J.B. had some deficits in this domain, these impairments were less than marked. *See* Dr. Michael Dennis's Assessment, AR 110 (emphasizing that S.J.B. is in regular education classes, is capable of learning and understanding, and does well when motivated); Dr. Dave Sanford's Assessment, AR 529, 533 (similar); and Dr. Robert Pelc's Testimony, AR 75-76 (noting that recent testing showed S.J.B.'s language and language-related abilities to be in the low-average range, or slightly below the average).

The ALJ also cited to S.J.B.'s transition away from special education and ability to participate in normal classes during the school day. AR 30. As Respondent stresses and the ALJ elaborated, S.J.B.'s fourth grade teacher, Vicki Garrett, filled out several questionnaires rating S.J.B.'s performance and limitations. AR 28 (citing AR 327-334, 345-352, 411-412). In these questionnaires, Ms. Garrett opined that S.J.B. had no or slight problems acquiring and using information. AR 328, 346. She reported that he worked at an "average level to slightly below that of most of [the] classroom" and did not need special education services. AR 345; *see also* AR 352, 412. Finally, she consistently noted that S.J.B. performed "fine" or "well" when he was motivated and focused on what he was doing. AR 334, 352.

Petitioner contends that the ALJ should have rejected these assessments and opinions and found that S.J.B. had an extreme limitation in this domain. Pt.'s Br. at 3 (Dkt. 22). The evidence Petitioner relies on to support this challenge consists of two tests: (i) an August 22, 2018 occupational therapy evaluation of S.J.B.'s visual perceptual skills and (ii) an August 28, 2018

**MEMORANDUM DECISION AND ORDER - 6**

test of S.J.B.'s reading ability.  Pt.'s Br. at 4-5 (Dkt. 22).  Petitioner argues that these tests

establish that S.J.B.'s ability to read and his visual perceptual skills are "at least three deviations

below the norm," and that S.J.B.'s ability to acquire or use information is, therefore, extremely

limited.  *Id.* at 5.

Petitioner is correct that standardized test results showing functioning at least three

standard deviations below the mean are generally indicative of an extreme limitation in a

particular domain.[3]  Petitioner misunderstands, however, and consequently overstates the

weakness of S.J.B.'s test results.

To begin, Petitioner assumes that because S.J.B. was reading three grade levels below his

actual grade and was in the third percentile of readers his age, he must be reading more than

three standard deviations below the mean.  Pt.'s Br. at 4-5 (Dkt. 22).  This does not follow.  The

term "standard deviation" has a specific statistical definition.  "The concept of standard deviation

describes how scores are dispersed in a population."  *Hall v. Florida*, 572 U.S. 701, 711 (2014).

It measures the "mean deviation from the mean."  *Gordon v. Comm'r of Soc. Sec.*, No. 2:18-CV-

11432, 2019 WL 4386940, at *13 (E.D. Mich. May 16, 2019) (quoting David H. Kay & David

A. Freedman, Reference Guide on Statistics, in Federal Judicial Center, *Reference Manual on

Scientific Evidence*, 239, 298 (3d ed. 2011)).  Relevant here, standard deviations "encompass the

same percentages of data in every normal distribution of data, which is the sort of distribution

that is [generally] expected to occur for standardized test scores."  *Id.*  For data that follows this

pattern, only 2.2755% of the data population will be two standard deviations or more below the

---

[3] The Social Security Administration defines as "extreme" limitation as one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).  It is "the equivalent of the functioning [one] would expect to find on standardized testing with scores that are at least three standard deviations below the mean."  *Id.*

**MEMORANDUM DECISION AND ORDER - 7**

mean and only 0.13% percent of the population will be three standard deviations or more below the mean. *Id.* Here, S.J.B. was reading in the third percentile. Assuming a normal population distribution, this percentile score is between one and two standard deviations below the mean. *See id.*

At the disability hearing, Dr. Pelc attempted to explain these facts to Petitioner. AR 78-82. Dr. Pelc even performed a rough translation of S.J.B.'s reading percentile rank on cross examination. AR 80. Consistent with the authorities cited above, Dr. Pelc estimated that S.J.B.'s percentile score of three would be less than two standard deviations below the population mean. *Id.* The ALJ reasonably credited this expert testimony over Petitioner's incorrect lay understanding of S.J.B.'s test results. AR 29-30.

Similar mistakes undermine Petitioner's reliance on the August 2018 testing of his visual perceptual skills. Petitioner selectively cites to the percentile scores for three sub-parts of this test to argue that S.J.B.'s "difficulty with visual perceptual skills are at least three deviations below the norm." Pt.'s Br. at 4-5 (Dkt. 22). In actuality, the test contained five parts: visual discrimination, spatial relations, form constancy, figure ground, and visual closure. AR 665. While S.J.B. scored in the first, fifth, and ninth percentile on three of the five parts, he scored in the 75th and 50th percentile on the other two parts. *Id.* Taken together, these scores are not in the range one would expect for someone more than three standard deviations below the mean. *See Gordon*, 2019 WL 4386940, at *13 (for normal population distributions, a person three or more standard deviations below the mean would be at or below the 0.13 percentile); *see also* 20 C.F.R. § 416.926a(e)(3)(i) (reserving the rating of "extreme" for children with the "worst limitations"). Indeed, the provider who administered the August 22, 2018 test described S.J.B.'s results as

**MEMORANDUM DECISION AND ORDER - 8**

"normal" for spatial relations and form constancy, "below average" for visual discrimination and figure grounds, and only "well below average" for visual closure.  AR 664.

In summary, far from undermining the ALJ's opinion, S.J.B.'s August 2018 testing aligns with a finding that S.J.B.'s limitations were less than marked.  *See* 20 C.F.R. § 416.926a(e)(2)(i) and 416.926a(e)(3)(i).

Even if there could be some question on this front, that would not justify reversal. However the August testing is interpreted, it cannot be viewed in isolation.  20 C.F.R. § 416.926a(e)(4).  As required, the ALJ considered all of the relevant testing and other evidence in determining the extent of S.J.B.'s functional limitations.  In addition to the evidence from the experts and S.J.B.'s teacher outlined above, this included November 20, 2018 testing of S.J.B.'s language skills.  Critically, this test, which was reported in a standardized form, showed that S.J.B. had "normal" language skills, less than one standard deviation below the mean.  AR 670. Dr. Pelc, and by extension the ALJ, reasonably relied on this test, the August testing, the reports of S.J.B.'s teacher, and the record as a whole to conclude that S.J.B.'s limitations in acquiring and using information were less than marked.  AR 28-30, 75-82.

## 2.  *Interacting and Relating with Others*

In finding that S.J.B. had less than a marked limitation in interacting with and relating to others, the ALJ once again relied on the reports of S.J.B.'s teacher, Ms. Garrett.  AR 32. Notably, Ms. Garrett reported that S.J.B. had no problems playing cooperatively with other children, making and keeping friends, following rules, taking turns in a conversation, and respecting or obeying adults.  AR 330, 347.  She explained that S.J.B. was "slightly taller and bigger than his classmates" and could "sometimes be too physical when he gets excited," but that he otherwise "socializes well and is usually very respectful in class."  AR 331.

**MEMORANDUM DECISION AND ORDER - 9**

The ALJ also cited a disciplinary log documenting S.J.B.'s behavior at school. *Id.* As the ALJ noted, S.J.B. "had only one behavior incident during the 2016-2017 school year, no behavioral incidents during the 2017-2018 school year, and two behavioral incidents during the 2018-2019 school year." AR 32 (citing AR 676-379). This represents a marked improvement from S.J.B.'s behavior at school during the period when he was still considered disabled. AR 27, 55, 65-66, 678-679.

Finally, the ALJ relied on Dr. Pelc's expert testimony. Based on the above reports and on his review of the medical record, Dr. Pelc concluded that S.J.B. had less than a marked limitation in interacting with and relating to others. AR 76 (citing AR 580). The ALJ reasonably elected to credit this testimony. AR 32.

None of the evidence Petitioner has identified warrants disturbing these findings. First, Petitioner highlights one fight S.J.B. had in school in October 2018. Pt.'s Br. at 6 (Dkt. 22). The ALJ, however, acknowledged this fight and reasonably found that it did not demonstrate marked difficulties in interacting with or relating to others because it "was the result of some fairly serious provocation by another student." AR 27, 32. Second, Petitioner cites her own testimony regarding S.J.B.'s behavior at home. Pt.'s Br. at 6-7 (Dkt. 22). Once again, the ALJ reasonably considered this testimony and recognized that S.J.B. had some behavioral limitations. AR 25-26, 32. In determining how severe these limitations were, however, the ALJ elected to give significant weight to S.J.B.'s school records, the reports of S.J.B.'s teacher, and the expert testimony. While Petitioner disagrees with this decision, Petitioner has not shown that it was unreasonable. This is fatal to Petitioner's appeal.

The role of the Court in reviewing an ALJ's factual findings is "a limited one." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The question on appeal is not whether substantial

**MEMORANDUM DECISION AND ORDER - 10**

evidence exists to support the claimant's preferred findings, but whether substantial evidence supports the ALJ's findings. *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). In answering this question, the Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). As long as the evidence rationally supports the ALJ's conclusions, these conclusions must be affirmed. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The ALJ's decision more than satisfies these standards.

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 22) are **DENIED,** and the decision of the Commissioner is **AFFIRMED.**

DATED: May 23, 2022

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 11**